**Peter E. PERRY, Petitioner**

v.

**STATE CIVIL SERVICE COMMISSION (DEPARTMENT OF LABOR AND INDUSTRY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 9, 2011.

Decided Nov. 14, 2011.

Publication Ordered Jan. 25, 2012.

Elliot A. Strokoff, Harrisburg, for petitioner.

Lisa M. Sauder, Assistant Chief Counsel, and Jonathan D. Koltash, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this appeal of an order of the State Civil Service Commission (Commission), Peter E. Perry (Perry) challenges his removal from the position of Workers' Compensation Judge (WCJ) Manager with the Department of Labor and Industry (L & I). The Commission determined L & I proved just cause for Perry's removal based on credible evidence that Perry possessed a handgun in his office, left a handgun in his vehicle while parked on property owned or leased by L & I, and showed the handgun to his subordinate while in his vehicle. The Commission determined this conduct violated L & I's prohibition on the possession of weapons in the workplace. Perry argues the Commission erred in: (1) determining his pre-termination hearing satisfied the requirements set forth by the U.S. Supreme Court in *Loudermill*;[1] (2) concluding L & I proved just cause for removal; and, (3) dismissing his discrimination claim. Upon review, we affirm.

1. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

## I. Factual and Procedural Background

Perry began his employment with L & I in 1972; he retired in 2001. Perry returned to a WCJ position with L & I in 2006.

In August 2008, Perry was promoted to WCJ Manager assigned to the Southeastern District Office[2] of L & I's Workers' Compensation Office of Adjudication. The Southeastern District includes three facilities, which are located at 8th and Arch Streets in Philadelphia, Northeast Philadelphia and Upper Darby. Perry worked at the Arch Street location. Perry supervised 68 employees, including approximately 24 WCJs.

In May 2003, L & I, through its Secretary, circulated a Weapons Policy Statement. Thereafter, in November 2006, the Secretary reissued the Weapons Policy Statement as an appendix to L & I's Workplace Violence Manual. The 2003 and 2006 Weapons Policy Statements contain substantively identical language. Both policy statements specifically prohibit the possession of weapons, including, among other things, all forms of firearms, "while in or on property owned or leased by [L & I]." Commission Op., Finding of Fact No. 9; Reproduced Record (R.R.) at 133a–35a; Appointing Authority Exs. AA 2, AA 3.

During his orientation after his return to employment, Perry received a copy of L & I's 2003 Weapons Policy Statement. Also, the statement, when reissued, was distributed to employees.

Since December 2007, Perry held a license to carry a firearm. On occasion, Perry left his firearm in his car while at work. On one occasion in early 2009, Perry's secretary, Shannon Finnegan, ob-

served Perry in his office with his weapon in its holster. R.R. at 42a–43a, 44a–45a. Also, on another occasion during this timeframe, Perry inadvertently brought his weapon into his office in his briefcase. R.R. at 119a–120a.

On October 27, 2009, Perry attended a monthly executive staff meeting at L & I's Offices in the Eastgate Building in Harrisburg. Perry drove his personal vehicle to the meeting, and he parked his vehicle in a garage on the ground floor of the Eastgate Building.

Saundra Parker, the Administrative Officer for the Southeastern District, also attended the October 27 meeting. Parker traveled to Harrisburg by train, and she intended to return to Philadelphia by train. At the end of the meeting, Parker accepted a ride to the train station from Perry. Perry subsequently offered to allow Parker to drive back to Philadelphia with him in his vehicle, and she accepted. Five to ten minutes into the ride, Perry advised Parker he had his licensed weapon under the driver's seat of the vehicle. R.R. at 51a.

On November 16, 2009, Perry's immediate supervisor, MaryKay Rauenzahn, directed Perry to report to her office in Harrisburg to meet with her the next morning. At that meeting, Perry was advised that the meeting was a factfinding meeting. During the meeting, Perry was given an opportunity to discuss: (1) whether he showed his weapon to Parker while returning to Philadelphia on October 27; (2) whether he left his weapon in his car while parked at the Arch Street office; and, (3) whether he brought the weapon into the Arch Street office.

---

**2.** L & I does not include a "Southeastern District," but rather that term is a designation used internally by L & I.

During the meeting, Perry acknowledged, at times, keeping his weapon in his car while it was parked in a lot leased for use by L & I as well as showing his weapon to Parker during the drive from Harrisburg to Philadelphia. R.R. at 65a. However, Perry denied ever bringing the weapon into the workplace. In addition to Rauenzahn, two representatives from L & I's Office of Human Resources, Roger Williams and Shawn Kupchella, attended the meeting. At the conclusion of the fact-finding meeting, Rauenzahn advised Perry that he was suspended.

Thereafter, by letter dated November 24, 2009, Perry received written notice of his suspension, pending investigation, effective November 17. That letter stated, "[L & I] is investigating allegations of your violation of Management Directive 205.33, workplace violence and [L & I's] Weapons Policy." F.F. No. 2; R.R. 1a; Commission Ex. A. The letter was signed by Neil Cashman, L & I's Acting Deputy Secretary for Administration, "FOR: Sandi Vito, Secretary of [L & I]." *Id.*

Shortly thereafter, by letter dated January 7, 2010, Perry was advised he would be removed from his employment effective at the close of business. That letter provided the following reason for the personnel action:

Specifically, you violated the [L & I's] Weapons Policy (Information Bulletin 2003–04) and Management Directive 205.33 (Workplace Violence). On October 27, 2009, you showed a gun to your subordinate in your private vehicle while utilizing your vehicle on Commonwealth business, creating fear in your subordinate. You were also observed in possession of a gun in the workplace by another subordinate. During the November 17, 2009 fact-finding meeting,

you admitted that you are aware of the policies and that you did, in fact, show a gun to your subordinate in your private vehicle while utilizing it for Commonwealth business and had a gun in your personal vehicle parked on property owned or leased by the Commonwealth. This behavior is strictly prohibited. [F & I] cannot and will not tolerate weapons in the workplace nor violence or threats of violence. Further, your actions have demonstrated that [F & I] can no longer depend upon your judgment to make sound choices and appropriately carry out the goals of the [Workers' Compensation Office of Adjudication] with integrity.

F.F. No. 3; R.R. at 7a; Commission Ex. C. The letter was signed by Cashman, L & I's Acting Deputy Secretary for Administration, "FOR: Sandi Vito, Secretary of [L & I]." R.R. at 7a; Commission Ex. C. Perry challenged his removal before the Commission. Hearings ensued.

After the hearings, the Commission issued a decision in which it determined F & I proved just cause to remove Perry. Specifically, the Commission determined F & I presented "credible evidence in support of both the asserted standards—*i.e.*, the Management Directive on Workplace Violence and the Weapons Policy Statement—and each of the three actions by [Perry] it claimed as violations of those standards—*i.e.*, possession of a firearm in his office, leaving a firearm in his vehicle parked at [L & I] job sites and showing the firearm in his vehicle to his subordinate." Commission Op. at 23–24. Thus, the Commission dismissed Perry's appeal. Perry now petitions for review to this Court.

## II. Issues

■ On appeal,[3] Perry argues that his pre-termination hearing did not comply

---

3. Our review is limited to determining whether the Commission's findings were supported

with the requirements set forth in *Loudermill.* He further contends his single offense of inadvertently bringing a firearm into the workplace, in the context of an unblemished 30 year work history, did not constitute just cause for removal. Finally, Perry asserts that undisputed evidence of hostility and disparate treatment directed toward him satisfied his burden of proving his removal was discriminatory.

## III. Discussion

 In civil service cases, the Commission is the sole fact-finder. *Bosnjak v. State Civil Serv. Comm'n,* 781 A.2d 1280 (Pa.Cmwlth.2001). As such, determinations as to witness credibility and resolution of evidentiary conflicts are within the Commission's sole province, and we will not reweigh the evidence or substitute our judgment even though we might have reached a different factual conclusion. *Thompson v. State Civil Serv. Comm'n,* 863 A.2d 180 (Pa.Cmwlth.2004). When reviewing a Commission decision, we view the evidence, and all reasonable inferences arising from the evidence, in a light most favorable to the prevailing party. *Bosnjak.*

 Further, the Commission is given broad powers in the supervision and administration of the civil service system. *State Corr. Inst. at Graterford, Bureau of Corrs. v. Goodridge,* 87 Pa.Cmwlth. 527, 487 A.2d 1036 (1985).

### A. Pre-termination Due Process

Perry first argues the Commission erred in determining the "ambush meeting" of November 17, 2009 provided him the pretermination due process required by *Loudermill.* Pet'r's Br. at 12. Specifically, he contends he was not advised of the specific charges against him, and he was not provided with any evidence in support of those charges. Therefore, Perry asserts, the pre-termination meeting did not satisfy the due process required by the U.S. Constitution. *Antonini v. W. Beaver Area Sch. Dist.,* 874 A.2d 679 (Pa.Cmwlth.2005).

As to the applicable requirements under *Loudermill,* this Court previously explained:

> [W]here an individual has a property right in employment, he may be suspended prior to a full due process removal hearing, *but only after he has been afforded notice of the charges and an opportunity to respond. The very limited pretermination hearing 'should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.' Id.* at 545–46 [105 S.Ct. 1487]. The process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story. *Id.* at 546 [105 S.Ct. 1487]; *accord, Gilbert v. Homar,* 520 U.S. 924 [117 S.Ct. 1807, 138 L.Ed.2d 120] (1997) (suspension without pay of policeman at East Stroudsburg University after arrest on felony drug charges).
>
> Notice is sufficient, 1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstances of the case. *Gniotek v. City of Philadelphia,* 808 F.2d 241 (3rd Cir.1986). *However, advance notice is not required. Id.*

by substantial evidence, whether the Commission erred as a matter of law or whether it violated constitutional rights. *Cutler v. State Civil Serv. Comm'n (Office of Admin.),* 924 A.2d 706 (Pa.Cmwlth.2007).

" '[T]he timing and content of notice ... will depend on appropriate accommodation of the competing interests involved.' " *Id.* at 244, quoting *Goss v. Lopez,* 419 U.S. 565, 579 [95 S.Ct. 729, 42 L.Ed.2d 725] (1975).

*Antonini,* 874 A.2d at 686 (emphasis added).

■ Here, the Commission determined the pre-termination meeting conducted by L & I satisfied the requirements of *Loudermill.* Specifically, it stated:

Our rejection of [Perry's] claimed lack of a formal pre-disciplinary conference is based upon our view that his meeting, on November 17 with Rauenzahn, Williams and Kupchella, provided the required pretermination due process. As recounted by Rauenzahn, during the November 17 meeting[:]

We discussed the allegations made by Saundra Parker that while traveling in his car from the adjudication meeting back to Philadelphia he showed a gun to her.

We discussed the fact that a worker in the Arch Street Office had alleged that she saw a gun on his person in his office. We also discussed whether or not he had the gun in his car while it was parked on Commonwealth property at the 8th and Arch Street Office.

N.T. pp. 219–220. During the meeting, [Perry] admitted showing the weapon to Parker and maintaining the weapon in his parked car; [Perry] only denied having ever brought the weapon into the workplace. N.T. pp. 220, 401 ....

The matters discussed during the meeting were the same three actions cited by [L & I] as the bases for the later decision to remove [Perry]; [Perry] having been given the opportunity to explain and challenge each of the bases asserted by [L & I], it is our view that the requirement of pre-disciplinary due process was sufficiently met.

Commission Op. at 27–28. We discern no error in the Commission's rejection of Perry's claim. In short, the credited testimony, which is clearly supported by the record, reveals Perry received notice of the charges against him, a general explanation of L & I's evidence, and an opportunity to present his side of the story. R.R. at 64a–65a.

We further reject Perry's claim that the phone call he received on the eve of his pre-termination meeting was insufficient to apprise him of the charges against him. As stated above, no advance notice was required. *Gniotek; Antonini.* More particularly, in *Gniotek,* the Third Circuit explained:

Lack of advance notice ... does not constitute a *per se* violation of due process. *See, e.g., Goss,* 419 U.S. at 582, 95 S.Ct. at 740 (In the case of a student's suspension from school, '[t]here need be no delay between the time 'notice' is given and the time of hearing.'). *Indeed, the First Circuit recently indicated that in the employee termination context, notice served at the predeprivation hearing satisfies the demands of due process. Brasslett v. Cota,* 761 F.2d 827 (1st Cir.1985).

*We agree with the First Circuit that advance notice is not required....* In *Loudermill,* the Supreme Court attempted to accommodate the government's interest in quickly removing an unsatisfactory employee with the employee's interest in retaining employment. The balance was struck by allowing the government to dismiss the employee after only a compressed hearing and by guaranteeing to the employee 'an opportunity to present his side of the story' followed by a prompt and complete post-termination hearing.....

*Gniotek,* 808 F.2d at 244–45 (emphasis added). In short, notice at the outset of the pre-termination meeting was sufficient to satisfy the requirement espoused in *Loudermill. See Goss; Gniotek.*

With regard to the notice provided here, Rauenzahn testified:

Q What was the purpose for the meeting as you related it to Mr. Perry?

A What I related to him the night before or when he arrived?

Q Well, let's start with the night before.

A The night before I simply told him that there were several issues that had come up unexpectedly that I needed to discuss with him. *When he arrived at the L & I Building the next day we advised him that there were several allegations and we were going to do a fact finding.*

Q Why did you not fully relate the reasons the night before?

A *I was concerned because there were weapons involved and I did not want to upset him unduly without knowing what was really happening. So I made the decision to just invite him to discuss it without telling him exactly what we were going to discuss.*

Q Did you take any precautions for the day of the meeting?

A Yes. Through HR and Roger Williams, I think Shawn Kupchella, they arranged to have the Capitol Police present at the meeting.

Q Who was present at the meeting?

A Myself, Shawn Kupchella, Roger Williams were actually in the fact finding. Prior to the fact finding there were

two, maybe three, Capitol Police present but they left for the meeting.

z3

Q What issues did you discuss with Mr. Perry at the fact finding conference?

A ... *We discussed the allegations made by Saundra Parker that while traveling in his car from the adjudication meeting back to Philadelphia he showed a gun to her.*

*We discussed the fact that a worker in the Arch Street Office had alleged that she saw a gun on his person in his office. We also discussed whether or not he had the gun in his car while it was parked on Commonwealth property at the 8th and Arch Street Office.*

R.R. at 62a–65a. Because notice at the outset of the meeting was sufficient to satisfy *Loudermill,* and because the offenses at issue involved allegations of a handgun in the workplace, L & I's decision not to provide more specific advance notice evidenced an appropriate exercise of caution.[4]

Moreover, our decision in *Antonini,* relied on by Perry, is distinguishable. *Antonini* involved a school superintendent who was provided "neither adequate notice nor a meaningful opportunity to be heard" when he believed an executive session with the school board related to a construction issue, but, in fact, he was questioned about three unrelated issues. *Id.* at 686. Some of these issues were also discussed outside the superintendent's hearing and without his participation. This Court explained that the meeting, in which the school board did not provide the superintendent with an explanation of the evidence against him,

---

4. Also, as for Perry's complaints that Capitol Police Officers were present prior to the meeting, and that the officers frisked and questioned him, given the nature of the charges at issue we believe L & I acted within its discretion in employing these precautionary measures.

"was not a sufficient initial check against a mistaken decision...." *Id.* at 687.

*Antonini* is inapposite. The credited testimony here reveals Perry was informed of the charges and evidence against him, was afforded an opportunity to respond, and, in fact, admitted to two of the three allegations. R.R. at 64a–65a. As such, we reject Perry's reliance on *Antonini.*

### B. Just Cause for Removal

Perry next argues the Commission erred in determining that one instance of inadvertently bringing a licensed firearm into a workplace, in the context of an unblemished work record spanning more than 30 years, was just cause for removal from the classified service. He asserts the proffered explanation that termination was mandatory because "we are all aware of instances where individuals with a permit have killed their colleagues," is contrary to L & I's weapons policy and represents an impermissible infringement on the rights guaranteed by Article 1, Section 21 of the Pennsylvania Constitution and the Second Amendment of the U.S. Constitution. Pet'r's Br. at 11, 22.

■ Initially, the Commission did not find, as Perry suggests, that this case involved one inadvertent instance of bringing a firearm into the workplace. Rather, the Commission explained (with emphasis added): "To be perfectly clear ... inasmuch as we believe [Perry's secretary's] testimony that she observed [Perry] in his office wearing the gun holstered on his hip, *we do not believe his conduct was inadvertent.*" Commission Op. at 26; R.R. at 42a–43, 44a–45a.

■ In addition, we discern no error in the Commission's determination that L & I proved just cause for removal. To that end, Section 807 of the Civil Service Act,[5] 71 P.S. § 741.807, states: "No regular employe in the classified service shall be removed except for just cause." The term "just cause" is not defined in the Act. *Woods v. State Civil Serv. Comm'n,* 590 Pa. 337, 912 A.2d 803 (2006). Just cause must be merit-related, and the criteria for determining whether an appointing authority had just cause for removal must touch upon the employee's competency and ability in some rational and logical manner. *Wei v. State Civil Serv. Comm'n,* 961 A.2d 254 (Pa.Cmwlth.2008).

■ What constitutes just cause for removal is largely a matter of discretion on the part of the head of the department. *Woods; Pa. Bd. of Prob. & Parole v. State Civil Serv. Comm'n,* 4 A.3d 1106 (Pa. Cmwlth.2010). "However, to be sufficient, the cause should be personal to the employee and such as to render the employee unfit for his or her position, thus making dismissal justifiable and for the good of the service." *Pa. Bd. of Prob. & Parole,* 4 A.3d at 1112. Whether the actions of a civil service employee constitute just cause for removal is a question of law fully reviewable by this Court. *Id.*

Here, the Commission credited L & I's evidence regarding the existence of its policies concerning weapons in the workplace and Perry's violations of those policies. The Commission's supported findings reveal the following. L & I issued its employees a Weapons Policy Statement, which specifically prohibited the possession of weapons, including, among other things, all forms of firearms, "while in or on property owned or leased by [L & I]." F.F. No. 9; R.R. at 134a. The policy specifies that violations "may lead to disciplinary action up to and including termination from employment." R.R. at 134a.

---

5. Act of August 5, 1941, P.L. 752, *as amended.*

Perry received this policy. F.F. No. 10; R.R. at 136a–37a. Perry also received a copy of Management Directive 205.33 relating to workplace violence, issued by the Governor's Office, Secretary of Administration, which applied to all agencies under the Governor's jurisdiction. R.R. at 125a–32a, R.R. at 136a–37a.

The Commission found that Perry's actions in possessing a firearm in his office, leaving a firearm in his vehicle parked on L & I work sites and showing his firearm to his subordinate while in his vehicle on L & I business violated these policies. Commission Op. at 23–24. The Commission stated:

> We particularly note our acceptance of [L & I']s interpretation of its Weapons Policy Statement as an absolute bar to 'the possession and/or use' of handguns in the workplace except by authorized personnel for job-related purposes. N.T. pp. 30–31; AA Exs. 2, 3. Credible testimony from both [Perry's secretary] and [Perry] established that [Perry] on **at least** one occasion during January or February of 2009 without authorization and for no job-related purpose brought his handgun into his office. N.T. pp. 113–115, 124, 407–410.
>
> We have further deemed credible the testimony from [L & I's Secretary] indicating that: 1) she made the decision to remove [Perry]; and 2) her decision was based solely upon her conclusion that [Perry] had violated the weapons policies. N.T. pp. 286–287, 290–291. Such evidence is, to our minds, also sufficient to establish that the removal was for just cause.
>
> Our finding of just cause is based upon our belief that [Perry] knew or should have known of [L & I's] prohibition of weapons in the workplace. Credible evidence has shown that [Perry] was given at least one copy of the Weapons

> Policy. Further, [Perry], through his own testimony regarding a prior incident (N.T. pp. 404–405) indicated a clear awareness of the fact that weapons were not appropriate for the workplace. [Perry's secretary's] credible testimony established that [Perry] had the handgun in the workplace on at least one occasion; further [Perry], at hearing, acknowledged that, on at least one occasion, he brought his handgun into his office. Whether the testimonies refer to the same incident or different ones is irrelevant; whether the presence of the weapon was intentional or inadvertent is equally irrelevant. The evidence of record demonstrates that [Perry] violated [L & I's] policy; disciplinary action was therefore appropriate.
>
> The Commission accepts [L & I's] assertion of removal as the appropriate level of discipline.... [L & I's] Secretary has credibly emphasized the concerns which led her to conclude that her discretion needed to be exercised in favor of 'the safety of [L & I] employees.' N.T. p. 295. We agree with [L & I's] arguments asserting that [Perry's] actions rendered him unfit for [WCJ] Manager employment. AA Bf. pp. 23–24. [Perry], as a supervisor, would have been responsible for the enforcement of [L & I] policies against his subordinates; as a supervisor, [Perry], even despite his prior, presumably exemplary, service to [L & I], was appropriately removed for his failure to maintain the high standard of conduct required in such employment. See, *Woodbridge v. Commonwealth, Department of Revenue*, 62 Pa.Commw. 140, 143, 435 A.2d 300, 302 (1981).

Commission Op. at 24–25 (emphasis in original). Because the Commission's findings are amply supported by the record, and those findings, in turn, support a conclusion that L & I proved just cause to

remove Perry, we decline to disturb the Commission's decision.

Further, we reject Perry's reliance on our Supreme Court's decision in *Grieb v. Unemployment Compensation Board of Review*, 573 Pa. 594, 827 A.2d 422 (2003), an unemployment case. First, as to the differing standards applicable in civil service removal and unemployment compensation termination cases, this Court explained:

> *Just cause, justifying the removal of a civil service employe[e], is clearly a different standard from that of wil[l]ful misconduct, rendering the worker ineligible for unemployment compensation benefits.* Just cause may be established by [a] showing of conduct establishing that the employe[e] lacks the competency and ability to perform the duties of his position in the classified service.... Wil[l]ful misconduct imports the requirement that the employe[e]'s actions leading to loss of employment be shown to have wil[l]fully disregarded the employer's interest, deliberately violated its rules, or was so grossly negligent as to have manifested culpability, wrongful intent or evil design. The purpose of the Civil Service Act is to give job security to competent public employe[e]s in the classified service. The purpose of the Unemployment Compensation Act is to provide financial support to workers without jobs for reasons other than their deliberate misconduct in their last employments.

*Lebanon Cnty. Bd. of Assistance, Dep't of Pub. Welfare v. Unemployment Comp. Bd. of Review*, 16 Pa.Cmwlth. 558, 332 A.2d 888, 889 (1975) (emphasis added) (citations and footnotes omitted); *see also Morrison v. Dep't of Corr.*, 659 A.2d 620 (Pa.Cmwlth. 1995).

In addition, *Grieb* is distinguishable. There, a part-time teacher, who was in the process of moving to a new residence, loaded her car with various items, which included three unloaded shotguns. Early the next morning, the school district contacted the teacher requesting that she serve as a substitute for another teacher. The teacher agreed to do so and proceeded to the school, forgetting that the three unloaded shotguns were still in her car. Another employee noticed the weapons in the teacher's car and alerted the school administration, which suspended the teacher without pay. The teacher was initially denied unemployment benefits on the ground she committed willful misconduct by violating the school district's weapons policy.

On further appeal, however, our Supreme Court reversed. The Court recognized the school district was within its rights to terminate the teacher based on her violation of the weapons policy; however, it held her actions did not rise to the level of willful misconduct. The Court stated that the undisputed evidence revealed the teacher did not intentionally fail to remove the shotguns from her vehicle. Instead, her actions were merely negligent and not intentional or deliberate as required for a finding of willful misconduct. The Court further noted the record lacked evidence that the teacher's conduct was recurring or that it involved a substantial disregard of her employer's interest. As such, the Court awarded unemployment benefits.

Unlike in *Grieb*, we are not confronted with the question of whether Perry's actions rose to the level of willful misconduct, but rather we are asked whether L & I proved just cause to remove Perry from his civil service position. *Lebanon Cnty. Bd. of Assistance.* Further, unlike *Grieb*, which involved an inadvertent violation of an employer's weapons policy, here, the fact-finder determined Perry's possession

of a handgun holstered on his hip, while in his office, was not inadvertent. Commission Op. at 26. Thus, *Grieb* is inapplicable here.

We also reject Perry's reliance on *Bolden v. Chartiers Valley School District*, 869 A.2d 1134 (Pa.Cmwlth.2005). In *Bolden*, a school district's director of transportation forgot that he had a loaded firearm in a compartment of his motorcycle and drove onto school property. This Court considered whether the director's conduct violated Section 912 of the Crimes Code, 18 Pa.C.S. § 912, which prohibits possession of a weapon on school property. Based on the undisputed findings, we determined the director did not violate that provision because he did not "knowingly" or "recklessly" possess the weapon on school property as he was unaware it was in the compartment of his motorcycle. *Bolden*, 869 A.2d at 1139. Nevertheless, we held the director's conduct violated Section 514 of the School Code,[6] which authorizes a school board to remove an employee for, among other things, neglect of duty, even in the absence of a policy prohibiting weapons on school property. We also stated that the fact that the director was a good employee with no prior misconduct did not excuse his conduct.

We fail to see how *Bolden* supports Perry's position. There, we deemed the director's act of bringing a gun onto school property constituted a neglect of duty even in the absence of a policy prohibiting weapons on school property. Similarly, here, we agree with the Commission that Perry's violation of L & I's weapons policy constitutes just cause for his removal. In any event, unlike in *Bolden*, where the employee inadvertently brought a weapon onto school property, here the fact-finder specifically determined that Perry's conduct, in at least one instance, was not inadvertent.

■ As a final point, Perry asserts that he was "discarded by L & I because he exercised a right guaranteed by the Second Amendment to the federal constitution, and, in a much more straight forward manner, guaranteed by Article 1, Section 21 of the Pennsylvania Constitution...." Pet'r's Br. at 24. Perry further contends that "[w]hen the state, as an employer, disciplines one if its employees and an infringement of a constitutional right is implicated, there is a 'calculus of injury' required and the 'government's obligation to react with caution, disciplining an employee, if at all, only when an injury to the agency is more than speculative.'" Pet'r's Br. at 25 (quoting *Sacks v. Dep't of Pub. Welfare*, 502 Pa. 201, 215, 465 A.2d 981, 988 (1983)). Notably, however, Perry does not assert that L & I's Weapons Policy Statement is unconstitutional.

The Commission declined to address this issue, stating, "[t]he parties have presented little or no discussion and analysis of this issue and have not established that resolution of the constitutional claim is essential to our determination of this appeal...." Commission Op. at 29.

Although not raised in detail before the Commission, we believe Perry's brief mention of this issue at the hearings before the Commission, and his brief discussion of this issue in his post-hearing brief is sufficient to avoid waiver.

As to the merits, the Second Amendment of the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. CONST. amend. II. Additionally, Article 1, Section 21 of the Pennsylvania Constitution states: "The

---

6. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 5–514.

right of the citizens to bear arms in defence of themselves and the State shall not be questioned." PA. CONST. art. 1, § 21.

This Court previously recognized the right to bear arms is not unlimited; it may be restricted in the exercise of police power for the good order of society and protection of citizens. *R.H.S. v. Allegheny Cnty. Dep't of Human Servs., Office of Mental Health,* 936 A.2d 1218 (Pa.Cmwlth. 2007).

Further, in *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), in which the U.S. Supreme Court held that a District of Columbia statute that prohibited possession of handguns in the home violated the Second Amendment, the Court explained:

> *Like most rights, the right secured by the Second Amendment is not unlimited.* From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.... *[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms* by felons and the mentally ill, or laws forbidding the carrying of firearms *in sensitive places such as* schools and *government buildings....*

*Id.* at 626–27, 128 S.Ct. 2783 (emphasis added) (citations omitted). *See also McDonald v. City of Chicago, Illinois,* — U.S. —, —, 130 S.Ct. 3020, 3047, 177 L.Ed.2d 894 (2010) (reiterating that, "[w]e made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as ... laws forbidding the carrying of firearms in sensitive places such as ... government buildings.... We repeat those assurances here.") (citation and quotations omitted).

Based on the above authority, which recognizes that the right to bear arms is not unlimited, and may be restricted for the good of the order of society and the protection of citizens, *R.H.S.,* and that a prohibition on carrying firearms in sensitive places such as government buildings is permissible, *McDonald; Heller,* we discern no infringement on Perry's constitutional right to bear arms based on the facts presented here.

Further, Perry's citation to *Sacks* omits the fact that the "calculus of injury" requirement referred to by our Pennsylvania Supreme Court in that case was limited to First Amendment government employee cases. *Sacks* involved a situation in which the Court ordered a state employee reinstated following a discharge for public comments critical of his agency employer. In explaining the applicability of the "calculus of injury" requirement, the Supreme Court stated: "As the foregoing discussion indicates, *there is a calculus of injury required in First Amendment government employee cases* in which as the First Amendment interest in the speech rises, so does the government's obligation to react with caution, disciplining an employee, if at all, only when injury to the agency is more than speculative." *Sacks,* 502 Pa. at 215, 465 A.2d at 988 (emphasis added). Perry cites no authority, and our research fails to disclose any authority, that extends the "calculus of injury" requirement beyond a case involving the First Amendment. Therefore, we reject Perry reliance on *Sacks.*

## C. Alleged Discrimination

Finally, Perry contends the undisputed evidence of hostility and disparate treatment directed toward him was sufficient to satisfy his burden of proving his suspension and termination were based on non-merit based factors. Perry also points to an alleged procedural violation that oc-

curred during the disciplinary process. Perry's argument on this point encompasses two discrete theories of discrimination: technical discrimination and traditional discrimination.

### 1. Technical Discrimination

First, as to his claim of technical discrimination, Perry asserts that his suspension and termination letters were not signed by the appropriate signatory authority as required by Commission regulation and L & I management directive. Specifically, he argues, although L & I witnesses testified it was the human resources director who issued the order to suspend Perry, it was the Acting Deputy Secretary who actually signed the suspension letter. Perry contends Management Directive 580.11(b)(2) requires that the Secretary of a Department file written delegations of authority with the Commission regarding personnel action. He maintains that here L & I conceded the required form delegating authority to the Acting Deputy Secretary was not filed with the Commission at the time he was suspended or discharged as required by the management directive. Indeed, Perry maintains, after he raised this lack of signatory authority in the appeal of his suspension, the Acting Deputy Secretary "still brazenly went ahead" and signed the termination letter as well, again in disregard of established procedure. Pet'r's Br. at 29.

■ Technical discrimination involves a violation of procedures required pursuant to the Civil Service Act or related regulations. *Reck v. State Civil Serv. Comm'n,* 992 A.2d 977 (Pa.Cmwlth.2010). In order to obtain relief, an employee must show that he was, in fact, harmed because of the technical non-compliance with the Act or evidence that because of the peculiar nature of the procedural impropriety he could have been harmed but there is no way to prove that for certain. *Id.; Price v. Luzerne/Wyoming Counties Area Agency on Aging,* 672 A.2d 409 (Pa.Cmwlth. 1996).

■ Here, although Perry alleges L & I violated a management directive by failing to file a written delegation of signatory authority with the Commission, he does not explain how the asserted procedural violation harmed him. Thus, Perry's assertion is insufficient to support a claim of technical discrimination. *Reck.*

■ Furthermore, while Section 105.4 of the Commission's regulations, 4 Pa.Code § 105.4, requires that delegations of signatory authority be submitted in writing to the Commission, noncompliance is not grounds for automatic nullification of the personnel action. *See, e.g., Bosnjak* (failure to adhere to notice requirements in Section 105.3 of the Commission's regulations, 4 Pa.Code § 105.3, does not automatically nullify personnel action); *State Corr. Inst. at Pittsburgh, Dep't of Corr. v. Adamson,* 130 Pa.Cmwlth. 168, 567 A.2d 763 (1989) (failure to adhere to notice requirements in Section 105.1 of the Commission's regulations, 4 Pa.Code § 105.1, does not automatically nullify personnel action). In short, Section 105.4 does not nullify the principle that harm must be shown. Indeed, the regulation does not state otherwise.[7]

---

**7.** Of further note, although Perry claims that L & I's failure to delegate signatory authority in writing to the Commission constitutes a violation of a management directive, this Court holds that a management directive is not an administrative regulation with the force and effect of law. *Cutler v. State Civil Serv. Comm'n (Office of Admin.),* 924 A.2d 706 (Pa.Cmwlth.2007) (citing *Tire Jockey Service, Inc. v. Dep't of Envl. Prot.,* 591 Pa. 73, 915 A.2d 1165 (2007)).

Additionally, in rejecting Perry's technical discrimination claim, the Commission credited the Secretary of L & I's testimony that she: (1) directed that Perry be removed; (2) was involved in the preparation of the removal letter; and, (3) authorized its issuance under the Acting Deputy Secretary's signature. Notes of Testimony (N.T.), 3/24/10, at 286–87, 293–95, 318. Citing this Court's decision in *O'Byrne v. Department of Transportation*, 92 Pa. Cmwlth. 286, 498 A.2d 1385 (1985), the Commission determined this evidence was sufficient to show Perry's removal was undertaken with the active participation of the individual ultimately assigned such authority relative to Perry's employment, the Secretary of L & I. We agree with the Commission's determination.

In *O'Byrne*, a furloughed Department of Transportation employee argued the Commission erred in upholding his dismissal where the appointing authority presented no evidence that its personnel director, who signed his furlough letter, had authority to do so. Rejecting this argument, we held that the Secretary of Transportation's testimony that he approved the furlough was sufficient to show the letter signed by the personnel director was properly authorized.

We agree with the Commission that this case is substantially similar to *O'Byrne*. Here, as in *O'Byrne*, the Commission relied on the testimony of L & I's Secretary that she authorized Perry's dismissal, which was implemented through a letter signed by the Acting Deputy Secretary, to whom she delegated such authority. N.T. at 292–95. For these reasons, we reject Perry's technical discrimination claim.

**2. Traditional Discrimination**

With regard to his traditional discrimination claim, Perry asserts that his suspension and discharge were discriminatory because those actions were taken in retaliation for testimony he provided in another civil service case involving the removal of another WCJ. Perry claims that after he provided testimony in opposition to L & I's position in that case, his supervisor began to treat him in an abusive and hostile manner and continued to do so on numerous occasions. Perry contends the Commission refused to make any findings concerning this hostile treatment despite the fact that this evidence was undisputed. Based on this undisputed proof of discrimination, Perry argues, he satisfied his burden of proving traditional discrimination.

Section 905.1 of the Civil Service Act[8] provides: "No officer or employee of the Commonwealth shall discriminate against any person in the recruitment, examination, appointment, training, promotion, retention, or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors."

 In discrimination claims arising under Section 905.1, the employee claiming discrimination in personnel actions has the burden of presenting evidence to support such a charge. *Cola v. State Civil Serv. Comm'n (Dep't of Conservation & Natural Res.)*, 861 A.2d 434 (Pa. Cmwlth.2004). To do so, the employee must present sufficient evidence that, if believed and otherwise unexplained, indicates more likely than not that discrimination occurred. *Moore v. State Civil Serv.*

---

**8.** Section 905.1 was added by the Act of August 27, 1963, P.L. 1257, *as amended*, 71 P.S. § 741.905a.

*Comm'n (Dep't of Corr.)*, 922 A.2d 80 (Pa. Cmwlth.2007). Given the critical role of circumstantial evidence in discrimination cases, the *prima facie* burden of proof is not an onerous one. *Id.* Absent a credible response from the appointing authority, a presumption of discrimination arises and the employee's *prima facie* case stands determinative of the factual issue of the case. *Id.*

 If, however, the appointing authority offers a non-discriminatory explanation for the personnel action, the presumption drops from the case. *Id.* As in other civil litigation, the tribunal must then evaluate the entire body of evidence under the preponderance standard and determine which party's explanation of the appointing authority's motivation it believes. *Id.*

Here, the Commission rejected Perry's claim that his removal was due to discrimination in retaliation for his opposition to the decision to remove a WCJ in another, unrelated civil service proceeding. The Commission determined the Secretary of L & I's credible testimony established that her decision to remove Perry was made without knowledge of his actions relative to the other civil service matter. Rather, she testified that her decision was premised on Perry's violations of the weapons policy. Commission Op. at 26; N.T. at 289–91, 306–07. As such, the Commission rejected Perry's traditional discrimination claim based on L & I's advancement of a legitimate, nondiscriminatory reason for its decision to remove Perry.

We discern no error in the Commission's determination. In short, Perry bore the burden of proof on his discrimination claim. *Cola.* L & I offered a non-discriminatory explanation for the personnel action, Perry's violation of the weapons policy. As fact-finder, the Commission opted to believe L & I's explanation regarding the motivation for Perry's removal. Because this issue involved the resolution of conflicting evidence, *Moore,* and because the Commission's determination is supported by substantial evidence, we may not disturb it. *Thompson.*

Based on the foregoing, we affirm.

Judge BUTLER did not participate in the decision in this case.

### ORDER

**AND NOW,** this 14th day of November, 2011, the order of the State Civil Service Commission is **AFFIRMED.**