# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel C. Angelucci,  :
                    Petitioner  :
                               :
            v.                 :    No. 620 C.D. 2018
                               :    SUBMITTED: March 14, 2019
State Civil Service Commission  :
(Pennsylvania Board of Probation  :
and Parole),                   :
                    Respondent  :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  April 5, 2019**


Daniel C. Angelucci (Petitioner) petitions for review of an order of the State Civil Service Commission (Commission) that denied his appeal challenging his removal from employment with the Pennsylvania Board of Probation and Parole (Board).  We affirm.

Petitioner worked for the Board as a parole agent 2, regular status, which entailed supervising parolees and probationers (collectively, "offenders") in the community and guiding them to services aimed at preventing their return to prison.  In that capacity, the Board required him to interview his assigned offenders and their collateral contacts and to record in the appropriate logs the contacts that he made both in the field and in the office.  (April 3, 2018, Adjudication, Findings of Fact "F.F." Nos. 11-13.)  Offenders were classified into different levels (maximum,

medium, and minimum supervision), with each level requiring a different number and quality of monthly contact. (F.F. Nos. 23-25.)

By way of specific paperwork, the Board required Petitioner to create a Daily Supervision Report, which was to include a record of contacts or attempted contacts with or pertaining to an offender. (F.F. No. 15.) It also required him to compile a comprehensive and accurate Record of Interviews, which was to include a narrative of interviews, observations, test results, and information regarding the identity of the person with whom he spoke. (F.F. No. 17.) In addition, the Board required him to compile Monthly Detail Summary Reports identifying both offender and collateral contacts made for the previous month. (F.F. No. 18.) Petitioner also had responsibility for the repair and maintenance of an assigned Commonwealth vehicle and for the completion of reports regarding its operation. (F.F. No. 14.)

In October 2015, the Board discharged Petitioner from employment citing violations of its procedures. (F.F. No. 1.) As the Commission summarized, the Board charged Petitioner with "either fail[ing] to properly record offender contact notes for contacts he did make or fail[ing] to document other offender contacts that he was required to make according to the offender's level of supervision." (Adjudication at 26.) The Board also charged him with "falsify[ing] his Daily Supervision Reports and/or Monthly Automotive Reports, and . . . falsely record[ing] his state issued vehicle was in for maintenance service on two separate dates." (*Id*.) Following Petitioner's appeal, the Commission held three days of hearings at which the Board presented evidence in support of its position that there was just cause for Petitioner's termination. Ultimately, the Commission denied Petitioner's appeal and his petition for review followed.

2

On appeal, Petitioner presents two issues: (1) whether the Commission relied upon findings of fact unsupported by substantial evidence of record in concluding that the Board established just cause for his removal; and (2) whether the Commission violated his constitutional rights by prohibiting him from calling similarly situated employees to testify as to their workloads and treatment and from subpoenaing and reviewing the personnel files of such employees in the preparation and presentation of his case.

Section 807 of the Civil Service Act (Act)[1] provides that "[n]o regular employe in the classified service shall be removed except for just cause." Although the Act does not define just cause, courts have held that it relates to merit and touches upon the competency and ability of an employee to perform his or her duties in a rational and logical manner. *Pa. Bd. of Prob. & Parole v. State Civil Serv. Comm'n*, 4 A.3d 1106, 1112 (Pa. Cmwlth. 2010). The appointing authority has the burden to demonstrate just cause. *Id*. at 1111 n.8. Whether the employee's actions constitute just cause for removal is a question of law subject to our plenary review. *Id*. at 1112. In addition, the Commission is the sole factfinder and has exclusive authority to assess the credibility of witnesses and to resolve evidentiary conflicts. *Perry v. State Civil Serv. Comm'n (Dep't of Labor & Indus.)*, 38 A.3d 942, 948 (Pa. Cmwlth. 2011). As an appellate court, we cannot reweigh the evidence or substitute our judgment regarding which witnesses to believe. *Id*.

As an initial matter, we conclude that there is substantial evidence to support the findings of fact outlining how Petitioner violated (1) Board Procedure 4.01.04, Supervision, Case Record Contents; (2) Board Procedure 4.01.06, Levels of Supervision; and (3) Board Procedure 1.01.03, Code of Conduct. Substantial

---

[1] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.807.

3

evidence is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion reached. *Daily v. State Civil Serv. Comm'n (Northampton Cty. Area Agency on Aging)*, 30 A.3d 1235, 1239-40 (Pa. Cmwlth. 2011).

Board Procedure 4.01.04 requires a parole agent to enter offender contact notes within three business days. (F.F. No. 1.) The Board charged Petitioner with failing to enter nine offender contact notes within that time frame. In support of the charge, the Board presented the testimony of human resource analyst Erica Jackson. Jackson testified that she found one incident in June 2015 where Petitioner did not enter a Daily Supervision Report into the system within three days and discovered that his reports contained eight offender records for which interviews were reported to have occurred but for which records of interview were never completed. (F.F. Nos. 39-45) (citing Notes of Testimony "N.T." at 51-63 and 65-66; Reproduced Record "R.R." at 87-99 and 101-02.)

As for Board Procedure 4.01.06, which requires documented offender contacts pursuant to the required level of supervision, the Board charged Petitioner with failing on fifteen occasions to provide the appropriate level of supervision for the offenders in his caseload. In support of the charge, the Board presented the testimony of acting parole supervisor Adina Williams-Jones. Tasked with supervising Petitioner from June to August 2015, she testified that there were multiple places where Petitioner's June 2015 Monthly Detail Summary Report either conflicted with the information that he had written onto the Record of Interview (F.F. Nos. 59-62) or showed that he had not made the minimum number of contacts required for the offenders' respective levels of supervision (F.F. Nos. 57-59 and 62-72). In support of its findings of fact, the Commission referenced the pertinent passages from Williams-Jones' testimony. (N.T. at 160-61, 164-70, 174-77, 179,

181-82, 184, 186-92, and 204-06; R.R. at 196-97, 200-06, 210-13, 215, 217-18, 220, 222-28, and 240-42.)

Turning to Board Procedure 1.01.03, Code of Conduct, the Board charged Petitioner with falsifying his June 2015 Daily Supervision Reports and/or his June 2015 Monthly Automotive Report. Noting that Petitioner was afforded the opportunity to provide corrections and to resubmit an amended June 2015 Monthly Automotive Report, the Commission made numerous findings of fact comparing and contrasting what he claimed on his revised automotive report with what he claimed on his June 2015 Daily Supervision Reports. Emphasizing the inconsistencies, the Commission outlined Jackson's testimony as to the multiple discrepancies between the mileage Petitioner recorded in his resubmitted automotive report and his Daily Supervision Reports. (F.F. Nos. 48-54.) Additionally, Petitioner noted as follows regarding his resubmitted automotive report:

> "I'm noting more errors when I'm looking at it now. But this whole report to me was errors. And there was nothing intentional there. It was just out of whack." N.T. p. 733; [R.R. at 770] AA Ex. 23. In addition, he "may have" forgotten to include additional trips to and from collecting the mail. N.T. p. 734; [R.R. at 771] AA Ex. 7. "And another error I made was, when I put on the mileage report here, five miles from my house. It's actually one way. It should have been ten miles roundtrip." N.T. p. 732[; R.R. at 769].

(Adjudication at 31-33.)

Moreover, in addition to the ample evidence outlining the three categories of violations, Petitioner acknowledged that he had deficiencies. In the context of his argument that the Board subjected him to disparate treatment, he made a general concession by stating that he "was not the only Agent with deficiencies; similarly situated employees of the [Board] working in the same Unit as [Petitioner]

5

also had deficiencies and were not terminated." (Petitioner's Brief at 12.) More specifically, the Commission observed that he "acknowledged he may have made late or incomplete entries on Records of Interview he prepared." (F.F. No. 78.) Regarding the charge that he failed to meet the proper level of supervision for fifteen offenders during June 2015, Petitioner "acknowledged that he did not have full compliance with supervision requirements during any month in 2015. N.T. p. 643[; R.R. at 680]." (Adjudication at 31.)

Turning to whether there was just cause for termination, we agree with the Commission that the proven deficiencies related to merit and competency. Citing the testimony of the district director of the Philadelphia district office, Edward Furlong, the Commission observed the following regarding the importance of proper contacts with offenders:

> "It's a matter of public safety. You're charged with supervising offenders of a certain level. And the primary goal is to assist in public safety. We do that by meeting with the offender and with others that know the offender and deal with the offender on a routine basis." N.T. pp. 297-298[; R.R. at 333-34]. If a Parole Agent does not make the required contacts, the public safety is at risk. N.T. p. 299[; R.R. at 335]. [Further,] he is unable to assist the offender with finding employment and achieving a law-abiding lifestyle. By making the required contacts, a Parole Agent may be able to intervene in time to prevent minor issues from becoming major issues that could present a safety risk to the community. [*Id*.]

(Adjudication at 29.)

Once again citing Furlong's testimony, the Commission observed the following regarding the importance of entering contact notes within three days of the contact:

6

> [E]ntering the notes within three days means the information is more likely to be correct and complete; it also insures the information will be available to other employees in case the assigned Parole Agent is unavailable when an issue with the offender arises. N.T. at p. 300[; R.R. at 336]. It is important for the information in the reports to be truthful and accurate because the offender's liberty is at risk; if the information in the system is not accurate, the offender could be taken into custody unjustly or inappropriately. N.T. pp. 300-301[; R.R. at 336-37]. Moreover, continuously entering untruthful information reflects poorly on the Parole Agent's character, credibility, and trustworthiness. N.T. p. 301[; R.R. at 337].

(*Id*. at 29-30.)

Accordingly, in consideration of the ample evidence as to Petitioner's deficiencies, we conclude that there was just cause for Petitioner's termination. As the Commission observed, Petitioner's "continued inability to provide the proper level of contact with offenders, record his contacts with offenders[,] and inability to accurately document the mileage on his Commonwealth vehicle clearly reflect negatively upon his competency and ability to perform his job duties." (Adjudication at 35.)

Having determined that there was just cause, we turn to the issue of whether the Commission erred in failing to consider evidence that similarly situated employees were not subject to termination for such violations and, instead were subject to a progressive line of discipline. First, notwithstanding Petitioner's assertions that the Board subjected him to removal and declined to do the same with similarly situated employees, the present case involves just cause—not discriminatory treatment. As the presiding commissioner observed at the outset of the proceedings, the hearing pertained to Section 951(a) of the Act, not subsection

7

(b).[2]  (N.T. at 13-14; R.R. at 49-50.)  In that regard, the Commission stated that any comparator evidence would be relevant only to the harshness of the penalty and not to any discrimination claim.  (Commission's October 26, 2016, Letter; R.R. at 842.)

As for Petitioner's assertions that he was prohibited from calling similarly situated employees to testify as to their workloads and treatment, we note that the Commission denied the Board's motion to quash Petitioner's subpoenas for parole agents Emmett and Grube.  Stating that they would be expected to appear and testify at the hearing, the Commission opined that they could testify as to the common practices of parole agents thereby impacting the Board's just cause case.  (Commission's June 14, 2016, Order; Board's Brief, Appendix A.)  Therefore, it appears as though Petitioner's decision not to call them as witnesses was within his power.  In any event, notwithstanding the fact that Petitioner did not do so, he testified and submitted an exhibit outlining the respective workloads of a list of parole agents that included those two agents.  (Appellant Exhibit AP-6; R.R. at 803.)

As for the denial of Petitioner's request to subpoena human relations analyst Amy Smith, the Commission concluded that her testimony would be redundant vis-a-vis that of district director Furlong, who could testify as to such personnel information.  In addition, the Commission observed that Petitioner failed to make an oral request for such a subpoena on the record as required by its regulations.[3]  (Commission's October 26, 2016, Letter; R.R. at 842.)

Turning to the Commission's alleged denial of subpoenas for the personnel files of allegedly similarly situated employees, we note that Furlong

---

[2] Section 951 of the Act, 71 P.S. § 741.951, was added by Section 27 of the Act of August 27, 1963, P.L. 1257.

[3] In pertinent part, the regulation provides:  "**Subpoenas** for new or additional witnesses will not be issued after a hearing has been commenced and continued unless orally requested on the record at the hearing and approved by the Commission . . . ."  4 Pa. Code § 105.14a(a)(4).

8

testified as to his review of the subpoenaed personnel file of agent Wolfe. Furlong concluded that Petitioner and Wolfe were not similarly situated such that a comparison in terms of discipline was not meaningful. (Adjudication at 34-35.) Specifically, Furlong observed that Petitioner had a record of prior and related disciplinary actions whereas Wolfe appeared to have no such history. Additionally, Furlong noted that Petitioner's June 2015 violations were investigated and confirmed whereas those of Wolfe were still being investigated. Further, Furlong noted that Petitioner was charged with falsifying documents that he created whereas Wolfe was not similarly accused.[4] (*Id*. at 34.) Accordingly, the Commission considered evidence regarding disparate treatment, but did not find the comparator evidence to be persuasive as to the harshness of the penalty imposed.

Moreover, as the findings of fact reflect, management already administered progressive discipline in an effort to aide Petitioner in curing his deficiencies and retaining his position. *See* F.F. No. 4 (November 2004 three-day suspension with warning regarding future violations); F.F. Nos. 5-7 (July 2014, December 2014. and February 2015 counseling sessions with warnings regarding future violations); F.F. No. 8 (May 2015 three-day suspension with final warning that "[r]epeated offenses of the same or similar nature that occur at any point after the date of your receipt of this letter will have the probable consequence of your removal from employment."); and F.F. No. 10 (May 2015 counseling session).

Finally, we turn to Petitioner's allegations pertaining to the effect of a final warning date on the Board's power to terminate. By way of background,

---

[4] In its charging letter, the Board stated that, standing alone, any of the infractions relating to falsification would warrant removal from employment. (F.F. No. 1.) *See Davis v. Civil Serv. Comm'n of the City of Phila*., 820 A.2d 874, 878 (Pa. Cmwlth. 2003) (holding that "[r]epeated dishonesty, coupled with discredit to the [employer] and co-workers, is more than sufficient to constitute just cause for dismissal.")

Petitioner in a grievance challenged the Board's May 2015 imposition of a three-day suspension with a final warning. The Board in its August 2015 decision resolving the grievance stated that its decision was the equivalent of a three-day disciplinary suspension. In addition, it stated: "This is a FINAL WARNING. Repeated offenses of the same or similar nature that occur at any point *after the date of your receipt of this letter* will have the probable consequence of your removal from employment." (August 6, 2015, Alternative Discipline in Lieu of Suspension letter, Board Ex. AA-31; R.R. at 837) (Emphasis added.) Petitioner now argues that the Board in its August 2015 decision reset the final warning date to August 6, 2015, such that it had no right to terminate him for anything that occurred before that date. We disagree. While it is true that the decision contains the phrase "after the date of your receipt of this letter," actionable behavior that occurs before a final-warning date nonetheless can constitute just cause. An appointing authority can fire an employee for just cause, having never issued that person a final warning. It remains true that "[e]ven a single instance of misconduct or an error of judgment can constitute just cause for dismissal if it adversely reflects on the fitness of a person for his duties." *Davis v. Civil Serv. Comm'n of the City of Phila.*, 820 A.2d 874, 878 (Pa. Cmwlth. 2003).

Accordingly, inasmuch as the credited evidence supports the Commission's findings and legal determination of just cause and Petitioner was not deprived of a fair hearing, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel C. Angelucci, : 
              Petitioner : 
          : 
        v. :   No. 620 C.D. 2018
          : 
State Civil Service Commission : 
(Pennsylvania Board of Probation : 
and Parole), : 
              Respondent : 

# **O R D E R**

AND NOW, this 5th day of April, 2019, the order of the State Civil Service Commission is hereby AFFIRMED.

 

 

_____

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge