**Deanna M. SZABLOWSKI, Petitioner**

v.

**STATE CIVIL SERVICE COMMIS-
SION (PENNSYLVANIA LIQUOR
CONTROL BOARD), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 21, 2014.

Decided March 11, 2015.

Michael C. Kochkodin, Wyomissing, for petitioner.

Alina L. Andreoli, Assistant Counsel, Harrisburg, for respondent.

BEFORE: DAN PELLEGRINI, President Judge, MARY HANNAH LEAVITT, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge LEAVITT.

Deanna M. Szablowski (Employee) petitions for review of an adjudication of the State Civil Service Commission that, following remand, sustained the decision of the Pennsylvania Liquor Control Board to terminate her employment. Employee argues, inter alia, that the Commission erred because the Board's evidence did not prove that she violated a policy of the Board. We agree and, accordingly, reverse.

## Background

Employee began her employment with the Liquor Control Board in 2005 and, in April 2008, was promoted to Liquor Store Clerk 2, i.e., an assistant store manager. She began working at Store 0608 in August 2009, during which time the store manager and her immediate supervisor was Newton Mull. Mull and Employee supervised two other store clerks that handled cash register transactions: Dennis Wingle, who worked full-time, and Joseph Reedy, who worked part-time. In 2010, Employee informed Jerome Yeager, the District Manager, that she believed that Mull was stealing from the store by issuing refunds to his credit card. The Office of Auditor General investigated, and Mull was dismissed in January 2011.

In June 2011, Employee went on maternity leave for approximately two months. During her leave, the Liquor Control Board audited Store 0608. On September 21, 2011, the Board suspended Employee without a hearing. On November 15, 2011, the Board conducted a fact-finding session in which Employee participated. At its conclusion, Employee was discharged for "manipulating" store funds, records or merchandise in violation of Board policies. She was not charged with fraud or theft.

Employee appealed her suspension and discharge to the Commission. The Liquor Control Board identified the following reasons for her dismissal:

(1) Serious violation of procedure/manipulation of Commonwealth funds/records/merchandise in Store # 0608 despite prior related instruction and training; in that during the period of September 30, 2009 through January 12, 2011, you performed approximately 102 fraudulent/questionable post-voids which resulted in a loss to the Commonwealth of approximately $2,217.89.

(2) Serious violation of procedure in Store # 0608 despite prior related instruction and training; in that during but not limited to the period of September 30, 2009 through January 12, 2011, you improperly completed approximately 51 post-void transactions without having part/all of the required supporting documentation.

Reproduced Record at 753a (R.R. ——). These cited incidents all related to the period of time when Mull served as the manager of Store 0608 and supervised Employee. The Commission conducted a hearing on these two charges.

The Commission rejected the Liquor Control Board's second charge relating to 51 post-void transactions on which some of the supporting documentation was missing. Because several different persons and agencies had handled the records of Store 0608 in the course of the investigation of

Mull, the Commission concluded that Employee could not be held liable for any missing documentation. In addition, the Board's procedures required Employee to give this documentation to Mull, who was the person responsible for its preservation.

On the other hand, the Commission found that "29" (actually 30[1]) of the 102 "questionable" post-void transactions violated the Liquor Control Board's policy. Specifically, the Commission found that Employee's written statements that a card had been "declined" were not corroborated by the cash register's electronic journal. Commission Adjudication at 37. Because of this lack of electronic corroboration, the Board reasoned that Employee's written reason for the post-void transaction was not true. Further, the Commission accepted the Board's claim that 91 of Employee's post-void transactions could be correlated to inventory shortages at the store. Employee petitioned for this Court's review of the Commission's adjudication.

In *Szablowski v. State Civil Service Commission (Pennsylvania Liquor Board)*, 76 A.3d 590 (Pa.Cmwlth.2013) (*Szablowski I*), we vacated the Commission's adjudication and remanded for more findings. The Board had argued that Employer's written statement of "card declined" was synonymous with "bank declined." However, it was not clear that the Commission had accepted this construction, which impeded our appellate review. Accordingly, we directed the Commission to "make specific factual findings about whether each of Employee's written reasons for the 30 post-void transactions needed electronic corroboration." *Sza-*

*blowski I*, 76 A.3d at 601. We also ordered the Commission to "make specific findings of fact about whether the documentary evidence presented by the Liquor Control Board supports an inference that the missing inventory [at the store] can be correlated to a particular employee's post-void transaction, to random shoplifting or to other forms of theft." *Id.*

Upon receipt of this Court's remand order, the Commission informed the parties that the record could not be reopened and requested them to submit briefs to address the remand issues. Both parties complied with the request.

In its brief, the Liquor Control Board argued that Employee's written reasons for the 30 post-void transactions were false or inaccurate because there was no electronic corroboration. The Liquor Control Board offered no further explanation on why "card declined" was synonymous with "bank declined." Because 26 of the post-void transactions dealt with some of the same product brands missing from inventory, the Board argued there was a correlation between the two.

In her brief, Employee countered that her uncontradicted testimony established that she used different wording in her written explanations of her post-void transactions. The different phraseology meant the same thing: the card, whether a gift card or credit card, was rejected on visual inspection. The Liquor Control Board had never instructed her that she was to use particular words to distinguish between a visual rejection of the tendered card from a rejection made post-swipe.

---

1. The Commission found that 29 of the post-void transactions violated the policy, but it listed 30 post-void transactions in its adjudication. Civil Service Commission Adjudication of December 18, 2012, Finding of Fact 20 (Commission Adjudication). On remand, the Commission acknowledged that the number of post-void transactions at issue is 30. Civil Service Commission Adjudication of May 30, 2014 at 28 n. 16 (Commission Remand Adjudication).

The Liquor Control Board's policy was silent in this regard. Notably, the reason had to be written on the small space of a register tape. As to the missing inventory correlation, Employee argued that the Liquor Control Board's evidence was speculative and lacked any meaningful evidentiary basis.

**Hearing Evidence Relevant to Remand**

In July 2011, Kelly Leonard, one of the Liquor Control Board's auditors, reviewed the records at Store 0608. Between July 2009 and January 2011, while Mull was managing the store, his voided transactions totaled $22,827.15. By comparison, Wingle's totaled $5,569.52; Reedy's totaled $2,831.73;[2] and Employee's totaled $4,075.39. Leonard decided that Reedy's voided transactions were too small to warrant an investigation. Leonard did investigate Wingle's post-void transactions, but she did not find irregularities.[3]

On the other hand, Leonard concluded that 102 of the 132 sales voided by Employee over the 18–month period in question were potentially fraudulent. Leonard reached that conclusion because (1) some of the transactions were voided due to a declined credit card but there was no electronic record of a credit card swipe and (2) many of the voided transactions correlated with inventory losses. Commission Remand Adjudication, Finding of Fact No. 19.

Leonard explained that a "post-void" transaction deletes a sale from the cash register. A sale will be deleted, for example, if the customer does not have enough cash to make the purchase, changes his mind or his credit card is rejected. Leonard explained how a post-void transaction can be manipulated to facilitate theft: the clerk will place cash in the register for a sale; give the alcoholic beverage to the customer; and later void the sale and pocket the cash. The cash register drawer will settle at the end of the shift.[4] To minimize this possibility, the Liquor Control Board has a policy that requires the employee to write the reason for the post-void transaction on the print-out tape produced by the cash register. This paperwork must be retained.

Leonard then testified about "29" of Employee's post-void transactions, which actually numbered 30. In these post-void transactions, Employee wrote that the customer's credit card or other card was declined or not approved, but that fact was not corroborated by the register's electronic journal. Leonard stated that the electronic journal "is an imprint basically of everything that occurs in the register." R.R. 31a. It will "show you if a credit card was attempted and whether or not it was declined." R.R. 32a.

Leonard testified that 91 of Employee's 102 post-void transactions correlated to missing inventory. She did not explain how the Liquor Control Board's inventory review could "correlate" a loss to a particular employee's post-void transaction, as opposed to an incident of customer shoplift-

---

**2.** Because Reedy worked part-time his voided sales would be lower than those of other employees. Leonard did not explain why Employee's post-void transactions, only $1,200 higher than Reedy's, were large enough to warrant an investigation.

**3.** Leonard did not explain her investigation of Wingle or how his post-void transactions differed from Employee's.

**4.** Because of this potential for theft, only the manager or the assistant manager can authorize the post-void function on the cash register. However, the employee responsible for the post-void transaction is identified by his password.

ing or another clerk's theft. Inventory records do not trace specific bottles but only brands. Further, the inventory loss cannot be related to a specific date, let alone a day on which Employee had voided a sale. Again, Leonard explained that she did not find the correlation between inventory loss and Employee's post-void transactions to demonstrate fraud but, rather, to raise questions.

Andrea Smallacombe, the Liquor Control Board's human resources analyst, testified about Leonard's investigation. Smallacombe opined that Employee had violated Board policy by not writing down an accurate reason for post-void transactions. Smallacombe opined that there was some correlation between Employee's post-void transactions and missing inventory but she did not specify the basis for her opinion.

Employee testified that she had never been disciplined by her employer and had received good performance evaluations. She was shocked to learn of her suspension.

Employee testified about the so-called irregularities identified by Leonard. She testified that she faithfully complied with every Liquor Control Board requirement for documenting post-void transactions. She always printed a receipt and wrote down the reason for the voided sale. She retained this documentation, as required, and then gave it to the manager, Mull. She had no control over the documentation once Mull took possession of it.

Employee explained that a card tendered for payment is often declined before it is swiped. This happens where a credit card is not signed, the customer cannot provide identification or the name on the card does not match the person, e.g., a female name on a credit card presented by a male. R.R. 642a. It also happens where the customer tenders an unacceptable card, such as a Pennsylvania Department of Human Services Access Card that can be used only for the purchase of food. After being promoted to Clerk 2, Employee learned that the "store would get a charge back" where a card should have been rejected on visual inspection but was not. R.R. 603a. As a result, Employee became more vigilant and began rejecting more cards tendered for payment.

Employee testified that she completed approximately 200 cash register transactions a day, which equaled 4,000 transactions a month and 72,000 transactions over the course of the 18–month period studied by Leonard. During her years of employment, the detail and quality of her written reasons for post-void transactions had never been questioned or criticized by a supervisor. Her performance reviews were good. Long after the fact, the Board questioned 102 transactions out of 72,000, most of which involved "incomplete" documentation, i.e., either the original register tape or the post-void print out was missing.[5] Claimant testified that the electronic journal did not prove that her paperwork was not accurate on the 30 post-void transactions cited by the Board because a credit or gift card is often refused before it is swiped.

### Commission Remand Adjudication

On remand, the Commission found that the documentary evidence presented by the Liquor Control Board did not establish that any missing inventory could be corre-

---

5. The Board policy required the employee to attach the initial register tape to the tape issued after the sale was voided. In the 51 transactions cited by the Board one or more of the register tapes was missing. Mull, Employee's supervisor, was responsible for the maintenance of this paperwork. The Commission rejected the Board's dismissal on the basis of missing paperwork.

lated to Employee's post-void transactions. However, the Commission found that 27 of the 30 post-void "irregular" transactions identified by the Board were inaccurate because they were not corroborated by the cash register's electronic journal. Concluding that the Liquor Control Board's policy required an accurate recording of the reason for a post-void transaction, the Commission affirmed Employee's dismissal by the Board.

## Issues

■■■ In her appeal, Employee raises three claims of error.[6] First, she argues that the Commission erred in finding that just cause existed for her dismissal because the record does not support its conclusion that she violated a Board policy. Second, she contends that her suspension without pay violated due process because she did not get a pre-suspension *Loudermill* hearing.[7] Third, in the alternative, Employee argues that the Commission abused its discretion by declining to modify or set aside the discipline imposed after setting aside its earlier finding that inventory losses could be correlated with Employee's post-void transactions.[8] In light of this reversal, Employee contends that the Commission should have revisited its decision to uphold her removal.

## Legal Standard

■■■ We begin with a review of the applicable law. Section 807 of the Civil

Service Act[9] provides that "[n]o regular employe in the classified service shall be removed except for just cause." 71 P.S. § 741.807. The Civil Service Act does not define "just cause." This Court has explained that "just cause for removal is largely a matter of discretion on the part of the head of the department." *Perry v. State Civil Service Commission (Department of Labor and Industry)*, 38 A.3d 942, 951 (Pa.Cmwlth.2011). However, "just cause 'must be merit-related and the criteria must touch upon [the employee's] competency and ability in some rational and logical manner.' " *Wei v. State Civil Service Commission (Department of Health)*, 961 A.2d 254, 258 (Pa.Cmwlth.2008) (quoting *Galant v. Department of Environmental Resources*, 534 Pa. 17, 626 A.2d 496, 498 n. 2 (1993)). Just cause is established where the employee is unfit, "making dismissal justifiable and for the good of the service." *Perry*, 38 A.3d at 951. The Commission is the finder of fact and has exclusive authority to assess credibility and resolve evidentiary conflicts. *Wei*, 961 A.2d at 259. "Whether the actions of a civil service employee constitute just cause for removal is a question of law fully reviewable by this Court." *Perry*, 38 A.3d at 951.

The Commission held that an appointing authority's suspicions about an employee's conduct do not constitute just cause for a

---

6. Our review determines whether the Commission's findings are supported by substantial evidence, whether the Commission erred as a matter of law or whether it violated constitutional rights. *Cutler v. State Civil Service Commission (Office of Administration)*, 924 A.2d 706, 709 n. 3 (Pa.Cmwlth.2007).

7. Under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), due process requires that a public employee must receive a pre-termination hearing.

8. In her brief, Employee argues that the inventory shortages cannot be correlated to her post-void transactions. However, the Commission agreed in its remand adjudication that the record did not support this finding. Therefore, the issue is not before us.

9. Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§ 741.1–741.1005.

dismissal. Accordingly, it rejected the Liquor Control Board's suspicions that Employee was responsible for missing inventory. However, the Commission held that Employee had violated a specific policy of the Board. Whether the Liquor Control Board's evidence of record established a violation of its policy is the question now before the Court.

### The 27 Post–Void Transactions

■ Employee contends that the Board's evidence did not establish that 27 post-void transactions, of the 30 cited by the Board, were either improper or violated any policy. Indeed, the Liquor Control Board presented no evidence of the level of detail required in the recorded reason for a post-void transaction. Nor was it suggested that the Liquor Control Board's policy required a precise terminology to be used where a post-void transaction results from a clerk's rejection of a card on visual inspection.

The Liquor Control Board counters that the Commission reasonably inferred that when Employee wrote "declined" or "credit declined," she meant, specifically, that the card was swiped and the card issuer declined the sale. Without electronic corroboration of this declination by the card issuer, Employee's recorded reason was not accurate and suggests that she was manipulating cash register transactions for personal gain.

The Commission found that Employee did not comply with the Liquor Control Board's Manual of Instructions, which contains the following directive to "the Person-in-charge" of the register:

Immediately respond to a store employee who reports ringing a sale in error on the register. Verify the error, and, if necessary, void the transaction. *Record the reason for the void* and the correcting ring's sequence transaction number (if applicable) on the register receipt. *If the transaction was a Post Void, the original sales receipt must also be attached to the Post Void receipt.* The voided register receipt must be attached to the Clerk Settlement Report.

R.R. 814a–15a (emphasis added). In sum, the Manual requires an employee to (1) record the reason for the void on the register receipt; (2) attach the "original sales receipt to the Post Void" receipt; and (3) attach the register receipt to the void receipt. *Id.* The only requirement currently before us is the "reason for the void." The Commission found that Employee's "recorded" reasons on 27 post-void transactions were inaccurate, in violation of the above-quoted policy.

The Commission's remand adjudication listed 30 post-void transactions from 2010 and the corresponding reasons for the transactions as follows:

47. The BLCBS Auditors found that although the following void reports were notated as based upon a declined credit card, the corresponding electronic journal record did not indicate that a credit card transaction was either attempted or declined:

|   | DATE/TIME OF VOID | TRANSACTION NUMBER | AMOUNT |
|---|---|---|---|
| a. | 4/27 16:10 not enough on card | 3433 | $48.74 |
| b. | 5/19 09:56 not enough on card just got pint with cash | 5217 | $20.22 |
| c. | 5/24 18:03 card not approved | 5716 | $24.58 |
| d. | 6/08 18:49 card declined, not enough cash | 7236 | $11.12 |
| e. | 6/30 09:50 card declined | 9145 | $27.54 |
| f. | 7/06 17:39 card not approved | 9849 | $21.19 |

| | | | |
|---|---|---|---|
| g. | 7/09 10:35 card not accepted | 0131 | $16.94 |
| h. | 8/06 17:23 card declined | 2612 | $27.55 |
| i. | 8/07 12:25 credit declined | 2720 | $14.83 |
| j. | 8/13 12:13 credit declined | 3133 | $9.53 |
| k. | 9/04 09:45 credit declined | 5340 | $16.95 |
| l. | 9/04 11:57 card not approved | 5372 | $36.01 |
| m. | 9/10 09:27 card declined | 5814 | $12.29 |
| n. | 9/14 18:18 not approved | 6218 | $16.95 |
| o. | 9/17 20:56 credit declined | 6494 | $9.53 |
| p. | 9/22 09:40 card declined | 6737 | $21.19 |
| q. | 9/23 16:57 card declined | 6896 | $22.24 |
| r. | 9/29 17:51 credit would not authorize | 7551 | $40.26 |
| s. | 10/04 14:27 credit denied | 7953 | $14.83 |
| t. | 10/06 15:06 credit declined | 8225 | $21.18 |
| u. | 10/07 19:41 credit denied | 8422 | $77.34 |
| v. | 10/12 18:38 was trying to pay with an access card | 8834 | $22.25 |
| w. | 10/15 20:44 credit denied | 9136 | $14.83 |
| x. | 10/21 18:35 credit card not approved | 9584 | $61.45 |
| y. | 10/27 15:54 credit declined | 0196 | $25.43 |
| z. | 10/29 19:54 credit declined | 0493 | $15.89 |
| aa. | 10/30 10:45 card declined | 0536 | $29.67 |
| bb. | 11/06 20:54 debit/credit declined | 1325 | $11.65 |
| cc. | 12/18 20:07 credit card declined | 5789 | $13.77 |
| dd. | 12/30 20:20 credit declined | 7688 | $21.19 |

Commission Remand Adjudication, Finding of Fact No. 47 (internal citation and footnotes omitted). The Commission concluded that "g" (card not accepted), "n" (not approved), and "v" (trying to pay with an access card) did not require electronic corroboration. Commission Remand Adjudication at 35.

The Commission then made findings about another group of 27 post-void transactions made in 2010 by Employee. It listed these 27 other void reports as follows:

| | DATE/TIME OF VOID | TRANSACTION NUMBER | AMOUNT |
|---|---|---|---|
| a. | 6/05 16:40 husband's card | 7046 | $27.55 |
| b. | 6/09 20:09 wife's card | 7351 | $23.30 |
| c. | 6/21 13:28 tried to use boyfriend's card | 8417 | $13.24 |
| d. | 6/23 18:57 didn't have right credit card on them | 8621 | $9.00 |
| e. | 7/03 19:18 no id for card | 4283 | $26.99 |
| f. | 7/22 13:34 wrong card | 1304 | $8.99 |
| g. | 8/13 10:31 no id to use credit card | 3122 | $15.88 |
| h. | 8/14 18:50 no id for credit | 3379 | $7.41 |
| i. | 8/17 18:00 card not signed, no id | 3576 | $11.65 |
| j. | 8/23 15:45 card not signed, no id | 4201 | $9.00 |
| k. | 8/25 09:54 husband's card | 4298 | $14.83 |
| l. | 8/27 10:28 no id/card not signed | 4551 | $19.07 |
| m. | 8/28 17:34 card not signed | 4822 | $15.99 |
| n. | 8/31 11:10 no id | 4961 | $13.77 |
| o. | 8/31 16:49 wanted to use girlfriend's card | 4987 | $15.89 |
| p. | 8/31 16:55 wrong card | 4989 | $16.94 |
| q. | 9/02 13:23 expired credit card need to authorize new card | 5131 | $12.71 |
| r. | 9/15 20:55 no id for credit card | 6287 | $24.43 |
| s. | 9/16 11:04 credit card expired | 6303 | $15.89 |
| t. | 9/22 11:24 credit card not signed, no id | 6748 | $59.86 |

| | | | |
|---|---|---|---|
| u. | 9/23 18:47 card not signed | 6934 | $9.00 |
| v. | 9/29 19:07 credit card not signed | 7576 | $13.03 |
| w. | 10/01 17:06 card not signed, no id | 4623 | $25.42 |
| x. | 10/01 17:15 card expired | 4631 | $21.19 |
| y. | 10/14 10:11 credit card not signed, no id . | 8915 | $36.02 |
| z. | 11/03 19:22 girlfriend's card | 0896 | $10.59 |
| aa. | 11/04 17:02 credit card expired last month | 8468 | $21.18 |

Commission Remand Adjudication, Finding of Fact No. 48. Unlike the post-void reports covered in Finding of Fact No. 47, those listed in Finding of Fact No. 48 were not compiled by the Board and presented to the Commission in an exhibit. Rather, the Commission created this list from Liquor Control Board Exhibits AA–4 and AA–8.

As noted, Employee testified that there were many reasons she would reject a credit card without swiping it. She would do so if the credit card were unsigned, the customer could not verify ownership of the card or if the gender of the customer and the name on the card did not match. Employee also testified that that when she wrote "card declined," it meant the same thing as "card not approved" or "card not accepted," *i.e.*, it was rejected on visual inspection. R.R. 639a.

The Commission found Employee's testimony credible. Commission Remand Adjudication at 34. In spite of this credibility determination, the Commission did not accept Employee's explicit testimony that when she wrote "card not approved" she meant she "had declined [the] sale for [tender of an] invalid card." R.R. 641a. Instead, the Commission found "card not approved" was an inadequate explanation because it did not specify the basis for the card's invalidity. Commission Remand

Adjudication at 34. The Commission noted that on many occasions, *i.e.*, the 27 transactions covered in Finding of Fact No. 48, Employee's written reason did specify the reason for the invalidity. She wrote, for example, "No ID" for card. Commission Remand Adjudication at 34. The Commission expected, accordingly, that Employee would have uniformly used the specifically worded report, not the more general "card declined" or "not approved," in every case where a card was rejected on visual inspection and, thus, not swiped.

The Commission found that in all cases where Employee wrote that "credit" was "declined" or "denied," or "card declined" or "not approved," the "post-void transaction would also have needed electronic corroboration of a credit card attempt or swipe in the electronic journal." Commission Remand Adjudication at 35.[10] Accordingly, it found that 27 of the 30 post-void transactions set forth at Finding of Fact No. 47 needed

electronic corroboration in the form of a card swipe to be attempted for the explanation to be valid *since each explanation indicates that it was the card issuer not the cashier who declined* to honor the transaction at the point of sale.

10. The Commission reasoned that where Employee wrote "not enough on card," electronic corroboration was necessary because Employee could not have known whether the transaction would exceed the cardholder's credit limit merely by looking at it. Commission Remand Adjudication at 36. The Commission's reasoning is unfounded. First, the Commission assumes that the proffered card was a credit card, not a gift card. Second, the Commission did not consider the possibility that the cardholder, upon recognizing that the purchase exceeded the balance on the gift or other card, requested that the card not be used. Some cardholders know the balance on a gift card or debit card.

Commission Remand Adjudication at 36 (emphasis added). The absence of this corroboration led the Commission to conclude that

it was more likely than not that [Employee] either manipulated the post-void transaction by voiding a legitimate sale or *did not comply with [Liquor Control Board] policy by providing an inaccurate written explanation to justify the post-void.*

*Id.* at 36–37 (emphasis added). There are several flaws in the Commission's conclusions.

First, the Commission opined that Employee "had neither the authority nor the ability to decline a customer's request to pay by credit or debit [card] without first swiping the card for approval." Commission Remand Adjudication at 35. None of the Liquor Control Board's witnesses testified that Employee had to swipe a card even where it was facially invalid. This finding lacks any support in the record and is inconsistent with the Commission's finding that Employee did not need to swipe a Department of Human Services Access Card. *Id.* at 35.[11]

Second, the Commission's finding that Employee's "explanation indicates" that it was the card issuer that refused the transaction is at odds with the record. Employee testified that her chosen words "card declined," "not approved" or "credit declined" all meant that a credit card or gift card was rejected on visual inspection. Further, the Commission found Employee credible.

Third, the Commission's findings do not support a violation of the Liquor Control Board's policy. The Commission concluded that because Employee sometimes used "specific" reasons on her post-void reports she violated the Board's policy on each occasion that she wrote a "general" reason. Notably, the Liquor Control Board did not claim that Employee was discharged for not using the same level of detail in every written record of a voided sale. Nor did it present evidence that employees were instructed on the level of detail expected in any written record. The Manual of Instructions directs, simply, the "Person-in-charge" to "record" the reason for the post-void transaction, without any instructions on detail.

The Commission found that "not enough on card" meant the purchase exceeded the cardholder's credit limit. The evidence shows, however, that a "card" could also be an "AMEX or Visa" gift card bearing a maximum value on its face.[12] Likewise, the customer may have withdrawn the tendered card once he realized that the total sale exceeded the funds available on the gift or other card.

At the hearing, Employee's counsel questioned Leonard about the Liquor Control Board's premise that "not enough on card" should have been corroborated by an electronic record of a credit card swipe. Counsel questioned Leonard as follows:

Q. The very first page. In my client's hand on the void report that's been photocopied and with her initials

---

11. To be sure, the Liquor Control Board argued that "trying to pay with an access card" represented a suspicious report because there was no electronic record of the access card being swiped.

12. For transaction (b) in Finding of Fact No. 47, Employee wrote "not enough on card just got pint with cash." Liquor Control Board

Exhibit AA–2. Employee testified that some gift cardholders write the remaining balance on the card. Exhibit AA–2 contains a notation that the card in question may have been a Visa or AMEX gift card. Liquor Control Board Exhibit AA–2, Void Report of 5/19/10 ("could have been gift card? visa, amex?").

alongside it, it says *not enough on card*. Did I read that correctly?

A. Yes.

Q. You are *interpreting* that as a declined credit am I understanding your testimony correctly?

A. I interpreted it that it *might* be a declined credit, yes.

Q. Well it doesn't say declined credit, does it?

A. No, it does not.

Q. So your testimony is in each and every one of these instances even where it doesn't say declined credit, *you are presuming that* it *might be a declined credit event correct?*

A. Correct.

R.R. 83a (emphasis added). The Board's evidence established, at most, that "not enough on card" *might* be construed as "declined credit" or "bank declined," for which a card swipe would be expected. Leonard's "presumption" is not definitive.

The Liquor Control Board had the burden of proving that Employee violated its policy by writing down false or inaccurate reasons for a voided sale. The Commission inferred that because Employee sometimes wrote reasons detailed enough to explain the lack of an electronic swipe, then the less detailed reasons required corroboration in the electronic journal. There are several problems with this inference.

There were 132 sales voided by Employee over an 18–month period. The Board did not produce any evidence of instances where Employee wrote "card declined," "credit card not approved," or "credit denied," and there was an electronic record of a card swipe. Indeed, the Board produced no evidence on what reasons Employee wrote when there was an electronic record of a swipe.

Moreover, the Commission failed to consider a number of other relevant factors. There was little space on the tape for writing any reason. The differences in the wording of Employee's written records are just as easily explained by the fact that the voided transactions were infrequent occurrences and done over the course of 18 months. Chosen phraseology may have been no more than a function of the demands of the hour. Where an employee is busy, one can expect a shorter explanation. There is no uniformity to Employee's written reasons, and this is true for the generally worded written records as well as the more detailed ones. The general wording varied: "card declined," "not approved," "credit declined" and "debit/credit declined."

Employee did not testify that "card declined" or "card not approved" meant "bank declined." To the contrary, Employee testified that the different terms meant one thing: the tendered card was not approved based on a visual inspection. Her testimony was not rebutted in any way, and it was found credible. Logically, had Employee developed a scheme for petty thefts, she would have simply written specific reasons in every case, lest a reason be construed as requiring electronic corroboration.

### Conclusion

The Liquor Control Board dismissed Employee for manipulating the records on 102 post-void transactions. Most of its evidence was rejected, properly, by the Commission as establishing only suspicions of "fraudulent/questionable" activity. Ultimately, the Commission upheld Employee's removal because it found that 27 post-void transactions violated the Liquor Control Board's policy because they lacked electronic corroboration. However, the Liquor Control Board's evidence established, at most, that a credit card "swipe"

*might* have been necessary prior to declining the transaction on those 27 occasions. R.R. 83a. This evidence supports no more than a suspicion of manipulation, which is not enough to establish just cause, as was expressly held by the Commission. Simply, the Liquor Control Board's evidence did not support a violation of the Manual of Instructions or just cause for removal. *See Perry,* 38 A.3d at 951 ("Whether the actions of a civil service employee constitute just cause for removal is a question of law fully reviewable by this Court.").

For these reasons, we reverse the Commission's holding[13] and remand to the Commission to calculate backpay and benefits due Employee.

### ·ORDER

AND NOW, this 11th day of March, 2015, the order of the State Civil Service Commission dated May 30, 2014, is REVERSED and REMANDED to the State Civil Service Commission to calculate backpay and benefits owed to Deanna M. Szablowski in accordance with the attached opinion.

Jurisdiction relinquished.

---

**13.** Employee argues that her suspension violated due process. We need not address that point because no additional relief can be or-

dered beyond reinstatement and back pay. Likewise, our decision moots Employee's final issue.